OPINION
{¶ 1} Charlene Powell is appealing the judgment of the domestic relations division of the Montgomery County Common Pleas Court, which converted spousal support payments made in the previous eight years into arrearage payments.
 {¶ 2} Charlene and Leslie Powell[1] were divorced in 1983 and Leslie was ordered to pay spousal support in the amount of $100 per week. Leslie has failed to ever voluntarily pay his spousal support but has had several amounts garnished from his wages over the years. On January 11, 1994, Leslie moved to terminate spousal support. The trial court overruled his motion and determined Leslie's arrearage to be $33,200.00 as of February 15, 1994. However, the trial court suspended spousal support temporarily and stated that it would remain suspended "until [Leslie] acquire[d] income or other substantial assets from which spousal support [could] be paid or secured. Upon the occurrence of one of these events, spousal support [would] automatically reinstate without the need of further hearings, subject to the right of either party to move for an adjustment of the level of spousal support due to the said change of circumstances." The court also ordered Leslie to pay $50 per month on his arrearage.
 {¶ 3} In 1997, the Support Enforcement Agency ("SEA") discovered that Leslie was employed and receiving income. As described in the court order, the SEA automatically reinstated the spousal support and ordered Leslie's employer to withhold $492.99 per month for spousal support and $51 per month for the arrearage.
 {¶ 4} On October 16, 2000, Leslie filed another motion to terminate spousal support, which the magistrate again denied on February 12, 2001. This court order also provided that "[s]pousal support shall continue to be suspended pursuant to the report and recommendation filed on March 25, 1994," and ordered the SEA to "conduct an audit and determine an arrearage taking into account the suspension of spousal support effective March 25, 1994 and any arrearage shall be extinguished at the rate of $300 per month." The SEA found that as of May 31, 2001, the spousal support arrearage was $13,812.82.
 {¶ 5} Upon receiving the audit from the SEA, Charlene filed a motion to direct the auditor of the SEA to correct the audit arrearage. On June 4, 2001, a hearing was held in which the lead auditor from the SEA, Kindra Wood, testified. Ms. Wood testified that, although Leslie had never made a voluntary spousal support payment, his wages had been garnished for spousal support payments and he had paid $19,915.75 from March 25, 1994 through May 17, 2001. Ms. Wood also testified that the SEA's audit in 1997 erred in determining that the arrearage was $51,000 as this reflected an accrual during a period of time wherein Leslie was unemployed.
 {¶ 6} The magistrate dismissed Charlene's motion. The court based its dismissal on its February 2001 order that had continued to suspend spousal support pursuant to the March 1994 order, which Charlene had failed to appeal. Also, the court noted that Charlene had failed to present testimony on Leslie's income in 1997 and 1998, which would have allowed the court to determine if the $100 a week spousal support was justifiable. Charlene filed objections with the trial court. The trial court adopted the judgment of the magistrate. The trial court found that the SEA audit complied with the February 2001 order, which Charlene had not appealed. The trial court further stated that the remaining arrearage was $13,812.82 as of May 31, 2001. The trial court explained this figure stating that because the arrearage was $33,728.57 as of March 25, 1994 and payments had been made totaling $19,915.75 between March 25, 1994 and May 17, 2001, only $13,812.82 remained on the arrearage as of May 31, 2001. In so doing, the trial court retroactively converted payments made between 1994 and 2001 from current spousal support payments to payments on the spousal support arrearage. Thus, the trial court significantly reduced the arrearage Leslie owed. Also, the trial court suspended spousal support until either Leslie or Charlene petitioned the court to modify the order based on a change of circumstances. Charlene has appealed this judgment.
 {¶ 7} Charlene raises the following assignments of error:
 {¶ 8} "1. The court erred in overruling appellant's objection to magistrate's decision of February 2001.
 {¶ 9} "2. The court erred in not finding that the order of February 2001 could not retroactively convert payments of current spousal support to arrearages.
 {¶ 10} "3. The court erred in ordering defendant-appellant to pay costs of proceedings to correct audit."
 Appellant's first and second assignments of error: {¶ 11} Since the parties argue the first and second assignments of error together, we will likewise address them together. Charlene argues that the trial court could not retroactively convert the current spousal support payments into payments on the arrearages. We agree.
 {¶ 12} The Ohio Supreme Court has stated, "[a] judgment for alimony payable in installments, rendered upon entering a decree for divorce, constitutes a final judgment within the full faith and credit clause of the Federal Constitution so far as accrued installments are concerned, no modification of the decree having been made prior thereto, unless it appear[s] from the law of the jurisdiction wherein the decree was granted that the power of modification expressly retained extends to accrued as well as to future installments of alimony." Armstrong v.Armstrong (1927), 117 Ohio St. 558, 559.
 {¶ 13} R.C. 3119.83 provides, "[e]xcept as provided in section3119.84 of the revised code, a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment." R.C. 3119.84 states, "[a] court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered." Pursuant to these statutes, Ohio courts are permitted to make a determination that a support order may be modified and may make that modification retrospective to the date the motion was filed. Tobens v.Brill (1993), 89 Ohio App.3d 298, 304; Murphy v. Murphy (1984),13 Ohio App.3d 388, 389; Osborne v. Osborne (1992), 81 Ohio App.3d 666,674.
 {¶ 14} Charlene argues that the trial court erred in retroactively modifying Leslie's arrearage of spousal support. In 1997, the SEA discovered that Leslie had additional income and, pursuant to the 1994 court order, began garnishing Leslie's wages for payment on the arrearage, $51 per month, and Leslie's court ordered spousal support, $492.99 per month. As a result of these garnishments, nearly $20,000 was garnished from Leslie's wages. Leslie clearly was aware that the court was garnishing his wages and that the garnishment was in the amount described in the 1994 court order of $50 per month on the arrearage and $100 per week of spousal support. Yet, Leslie did not file an objection to the 1994 court order nor did he file an objection when the SEA began garnishing his wages in those amounts. Further, in Leslie's 2001 motion to terminate spousal support, Leslie stated the arrearage amount was $34,690.90, which was an increase in the arrearage since the 1994 order which set the arrearage at $33,200. Therefore, he did not believe the $492.99 garnished each month had been applied to the arrearage. Leslie did not file any objection to the garnishment until 2001 when he moved to have spousal support terminated. At no point did Leslie argue that the $492.99 garnished from his wages every month since 1997 applied towards the arrearage.
 {¶ 15} However, the SEA, when recalculating the arrearage as ordered by the trial court in February 2001, took the entire amount garnished from Leslie's wages since 1994 and applied this towards the arrearage. Thus, the SEA took the $492.99 per month that Leslie paid in current spousal support and set this amount off of his arrearage, lowering Leslie's arrearage to $13,812.82. The trial court upheld this action as proper basing its decision on the court's February 2001 order which stated that "[s]pousal support shall continue to be suspended pursuant to the report and recommendation filed on March 25, 1994," and ordered the SEA to "conduct an audit and determine an arrearage taking into account the suspension of spousal support effective March 25, 1994 and any arrearage shall be extinguished at the rate of $300 per month." The trial court stated that Charlene's failure to appeal this February 2001 decision waived her opportunity to object to the audit calculating the arrearage such that all payments made since 1994 applied to the arrearage rather than the then current spousal support. We disagree. We find that the language in the February 2001 order was not sufficiently clear to put Charlene on notice that the court was retroactively modifying past spousal support and the arrearage. Thus, Charlene's failure to object to the February 2001 order does not bar her objection to the SEA's audit and recalculation of the arrearage.
 {¶ 16} On the contrary, we find that Leslie was on notice that $492.99 was being garnished from his wages for the payment of current spousal support pursuant to the 1994 court order and failed to object. Additionally, Leslie admitted in his 2000 motion to terminate spousal support that he owed an arrearage in excess of $30,000. Although the lower court supported its judgment by stating that Charlene had not presented evidence of Leslie's 1997 and 1998 income for the court to determine if the spousal support payments were justifiable, Charlene did not have this duty. As the spousal support garnishment was made pursuant to the court's 1994 order and Leslie never objected to the order or the garnishment, Charlene did not have a duty to demonstrate that the past spousal support payments were justified. Rather, it is Leslie that is barred from asserting that all of the payments made since 1994 should be applied to the arrearage because of his failure to timely object to the order instituting automatic reinstatement of the spousal support or the garnishment of the spousal support from his wages.
 {¶ 17} Leslie additionally argues that Ohio courts may retroactively modify an arrearage back to the date the motion for modification was filed. Therefore, Leslie asserts that the trial court could retroactively modify his arrearage back to the time he filed his first motion to terminate spousal support in January of 1994. However, R.C. 3119.84 limits a court's ability to modify a duty to pay support to only after notice of a petition to modify has been given to the obligeeand before a final order on the petition is entered. A final order on Leslie's 1994 motion was filed in February of 1994. Therefore, Leslie's 1994 motion to terminate spousal support did not authorize the trial court to retroactively modify the spousal support payments and arrearage from 1994 to 2001.
 {¶ 18} Although the arrearage figure calculated by the SEA in 1997 may not be accurate if, as Ms. Wood suggested, it reflected accrual during a time of Leslie's unemployment, the SEA's 2001 audit did more than make this correction. The SEA's 2001 audit retroactively modified spousal support payments made since 1994 and converted them into payments on the spousal support arrearage. We find that the trial court abused its discretion in adopting the SEA's audit and thereby retroactively modifying the arrearage. Charlene's first and second assignments of error are sustained.
 Appellant's third assignment of error: {¶ 19} Charlene argues that, because the trial court erred in adopting the audit of the SEA, she should not have been ordered to pay the costs of the proceeding. We agree.
 {¶ 20} Because we have found that the trial court erred in approving the SEA's audit of Leslie's arrearage, we find it is an abuse of discretion for the trial court to order Charlene to pay court costs on her motion to have the SEA correct the audit arrearage. Appellant's third assignment of error is sustained.
 {¶ 21} The judgment of the trial court is reversed and remanded.
BROGAN, J. and GRADY, J., concur.
[1] In the interest of clarity, the parties will hereinafter be referred to by their first names.